**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| AXIA NETMEDIA CORPORATION ) | | |
| ) | **CIVIL ACTION** | |
| Plaintiff, ) | | |
| ) | **NO. 17-10482-TSH** | |
| KCST, USA, INC. ) | | |
| ) | | |
| Plaintiff Intervenor ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| MASSACHUSETTS TECHNOLOGY ) | | |
| PARK CORPORATION d/b/a ) | | |
| MASSACHUSETTS TECHNOLOGY ) | | |
| COLLABORATIVE ) | | |
| ) | | |
| Defendant. ) | | |

**MEMORANDUM AND ORDER ON PLAINTIFF AXIA'S MOTION TO DISSOLVE AND NULLIFTY THE PRELIMINARY INJUNCTION ORDER AND EXECUTE THE $4 MILLION BOND (Docket No. 220)**

**October 31, 2018**

Plaintiff Axia NetMedia Corporation ("Axia") filed this motion seeking to dissolve the preliminary injunction previously issued by this Court requiring Axia to perform its obligations under the parties' Guaranty Agreement while their various contractual disputes were in arbitration. Axia also requests that the Court execute the $4 million bond posted by MTC. For the reasons below, Axia's motion (Docket No. 220) is ***granted*** in part and ***denied*** in part.

**Background**

MTC is an independent public instrumentality of the Commonwealth of Massachusetts. Through state and federal grants, MTC built and owns the MassBroadband 123 network ("123

Network"). The 123 Network is comprised of over 1200 miles of fiber optic cable infrastructure which connects more than 120 communities in Central and Western Massachusetts. The 123 Network is used by numerous agencies serving critical public safety functions, including police and emergency services, as well as thousands of other users and customers in Central and Western Massachusetts.

On February 25, 2011, MTC entered into an Agreement for Network Operator Services ("NOA") with Axia NGNetworks USA, Inc. ("Axia U.S."), a wholly-owned subsidiary of Axia. The NOA is a 10-year public services contract, under which MTC agreed to build and install the 123 Network, and Axia U.S. agreed to market, maintain, service, and operate the network, as well as collect revenues, pay its expenses, and make fixed payments to MTC. On the same date, MTC also entered into a Guaranty Agreement with Axia, whereby Axia guaranteed the performance and payment obligations of Axia U.S., up to $4 Million. The same individual, Art Price, executed both the NOA and the Guaranty Agreement on behalf of Axia U.S. and Axia, respectively.

Section 2.1 of the Guaranty provides, in the event of a default by Axia U.S. in any of its payment and performance obligations under the NOA, that Axia

> (a)    shall make all such payments and perform all such obligations of the Network Operator, as described in and in accordance with the terms of the Network Operator Agreement, and as such obligations may be changed in accordance with the terms of the Network Operator Agreement (the "Guaranteed Obligations"); and
> (b)    shall fully and punctually pay and discharge, as the same become due and payable, any and all costs, expenses and liabilities for or in connection with the Guaranteed Obligations, including, but not limited to, the costs of causing the substituted performance of the Guaranteed Obligations. This guaranty is limited to and capped at the amount of Four Million ($4,000,000) US Dollars, and should Guarantor advance to MTC funds up to said amount, Guarantor shall have no further obligation or liability under this Agreement.

Docket No. 23-3.

In July 2014, after indications from Axia U.S. that it intended to stop making payments to, or on behalf of, MTC, until certain disputes between the parties were resolved, MTC commenced litigation in the Massachusetts Superior Court and obtained a TRO and preliminary injunction requiring Axia U.S. to perform its obligations pursuant to the "Continuing Performance" provision of the NOA. This provision required the parties to continue performing all obligations under the NOA while their dispute was resolved. That dispute centered on Axia U.S.'s complaint that MTC delivered only 944 of 1392 operational "Community Anchor Institutions", which it alleges were promised under the NOA. A "Community Anchor Institution" is defined by the National Telecommunications and Information Administration to include, *inter alia*, public safety entities, libraries, schools, state offices, and healthcare facilities. The NOA defined "Community Anchor Institution" to be "any one of the organizations and agencies identified in Exhibit A hereto, as the same may be revised from time to time in MTC's sole discretion up until the Commencement Date." Docket No. 1-1, § 2.7.

In February 2017, Axia U.S. changed its name to KCST USA, Inc. ("KCST"), and on March 22, 2017, filed for Chapter 11 bankruptcy protection. On the same date, Axia filed a lawsuit seeking declaratory judgment that the Guaranty was unenforceable because of MTC materially breached the NOA by failing to build sufficient CAIs and, because of that breach, that Axia had no responsibilities under the Guaranty. The First Circuit called this "the underlying dispute." *Axia NetMedia Corp. v. MA Tech. Park Corp.*, 889 F.3d 1, 6 (1st Cir. 2018).

On March 23, 2017, triggered by KCST's bankruptcy petition, MTC provided written notice of an Event of Default to Axia and made a demand under the Guaranty. Section 4.6 of the Guaranty Agreement provides:

> If the parties fail to resolve any dispute between them through mediation, or are unable to convene mediation within 60 days of first attempting to do so, then, at

> MTC's sole discretion, MTC may file a demand for arbitration by the American Arbitration Association in its office serving Boston, Massachusetts, in accordance with the rules for Commercial Arbitration in effect on the date of the Agreement providing the most expedited procedures available, and any such arbitration may be consolidated with an arbitration proceeding between MTC and the Network Operator. Except to the extent MTC elects arbitration as the method of dispute resolution for a given dispute, all disputes shall be resolved by litigation in a court serving Middlesex County, Massachusetts, except that, if suit is filed in state court and is not removed to federal court, the parties shall use all reasonable efforts to obtain acceptance of such law suit in the Business Law Session of the Massachusetts Superior Courts. All other provisions relating to dispute resolution or arbitration contained in the Network Operator Agreement are incorporated herein by reference.

Compl. Ex. B, at § 4.6. The relevant section of the NOA is Section 11.2, entitled "Continued Performance," which provides:

> The Parties agree to continue performing their respective obligations under the Agreement (including the Wholesale Customer contracts and SLAs) while the dispute is being resolved unless and until such obligations are terminated or expire in accordance with the provisions of this Agreement, or unless otherwise directed by MTC.

Docket No. 23-2, § 11.2.

MTC successfully demanded arbitration of the underlying dispute in accordance with the dispute resolution terms of the Guaranty Agreement. MTC also filed a motion for a preliminary injunction requiring Axia as guarantor to perform KCST's obligations under the NOA while the underlying dispute was in arbitration. The First Circuit called this dispute "the continued performance dispute." *Axia*, 889 F.3d at 6.

This Court granted MTC's motion for a preliminary injunction for the continued performance dispute while the underlying dispute was in arbitration conditioned on MTC posting a bond of $4 million for the duration of the injunction. When assessing the likelihood of success on the merits, this Court focused its attention on whether MTC would likely succeed on the merits of the continued performance dispute. The First Circuit subsequently upheld the injunction with

4

the modification "to make clear that Axia's obligations terminate once it has properly expended $4 million in complying with the Guaranty." *Id.* at 11.

Thereafter the underlying dispute was resolved in arbitration. The Arbitrator concluded in his Partial Final Award, *inter alia*, that:

> Since the underlying consideration for the Axia Guaranty was the NOA, and MTC materially breached it as noted above, Axia would have been excused *pro nunc tunc* from its performance obligations as of the date of breach—here determined to be July 15, 2014, <u>but for KCST's election to continue to perform, and to seek specific performance through renegotiated commercial terms per NOA sections 5.2.7 and 6.2</u>. Axia 'road the coat tails' of the KCST resolution of the failed underlying obligation. Certainly NOA section 11.2 also imposed a duty of continued performance on KCST while the dispute resolution played out. Thereafter, . . . KCST filed its bankruptcy petition . . . Following that filing—an Event of Default as defined in the Guarantee (section 3.2B), preliminary injunctive relief was secured by MTC against Axia compelling performance of the Guarantee. This resulted in Axia expending $3,865,334.81 to pay bills as of September 7, 2018; $862,042 for payments made through its subsidiaries under the Transactional Services Agreement (through the date claimed of June 30, 2018); and the incurring of $51,802 in costs in 2017 for services and time (R-198, table 1.3) in connection with information requests pursuant to the Preliminary Injunction Order. Since MTC is found to have been in material breach of the NOA, MTC was not entitled to the benefits it secured pursuant to the Guarantee through the preliminary injunctive relief ordered, as KCST's balance sheet would have had millions of dollars of additional revenue that MTC, in effect, wrongfully appropriated as its own since mid-2014. Accordingly, since Axia complied with the preliminary injunction . . . , Axia is damaged in the amounts identified above and is entitled to recoup those sums from MTC.

Arbitrator's Partial Final Award, AAA Case No. 01-17-00043049, Docket No. 220-2, at 28-29 (emphasis added). Axia subsequently moved this Court to dissolve the injunction and execute the bond. (Docket No. 220).

## Discussion

### 1. Change in Circumstances

A court may modify the preliminary injunction if Defendant can demonstrate that there has been a "significant change" in the circumstances such that "it is no longer equitable that the

judgment should have prospective application." Fed. R. Civ. P. 60(b)(5). "A change in operative fact may serve as a basis for vacating a preliminary injunction." *Concilio de Salud Integral de Loiza, Inc. v. Perez-Perdomo*, 551 F.3d 10, 16 (1st Cir. 2008); *see also Agostini v. Felton*, 521 U.S. 203, 215, 117 S.Ct. 1997 (1997) ("it is appropriate to grant a Rule 60(b)(5) motion when the party seeking relief from an injunction . . . can show a significant change either in factual conditions or in the law." (quotation marks and citation omitted)).

In *Axia Netmedia Corp. v. MA Technology Part Corp.*, 252 F. Supp. 3d 52 (D. Mass. 2017), this Court issued a preliminary injunction compelling continue performance of the Guarantee while the underlying dispute regarding the NOA was adjudicated. When assessing the likelihood of success on the merits, this Court focused on whether MTC was likely to succeed on showing the Guarantee was enforceable while the underlying NOA dispute was adjudicated, not on whether it would prevail in the underlying dispute. The First Circuit found that this Court was correct to focus on this issue as "MTC's success does not hinge on establishing that it will prevail in the underlying dispute. Rather, to succeed, it need prevail in establishing that Axia bound itself to perform pendente lite." *Axia*, 899 F.3d at 6. That Guarantee mandated that "[t]he parties agree to continue performing their respective obligations under the Agreement . . . while the dispute is being resolved." Docket No. 23-2, § 11.2.

MTC argues that Axia's attempts to dissolve the injunction are premature for two reasons: (1) the award is subject to modification and (2) the partial final award has not been confirmed by a court. As to MTC's first argument, under Rule R-50, the arbitrator may correct "computational errors in the award" but "is not empowered to redetermine the merits of any claim already decided." AAA Commercial Arbitration Rule R-50. In *Hart Surgical, Inc. v. Ultracision, Inc.*, the First Circuit noted that "[t]he prerequisite of finality promotes the role of arbitration as an

expeditious alternative to traditional litigation." 244 F.3d 231, 233 (1st Cir. 2001). "Normally, an arbitral award is deemed 'final' provided it evidences the arbitrators' intention to resolve all claims submitted in the demand for arbitration, *even though the arbitrators purport to retain jurisdiction in the event the need arises to resolve some subsidiary matter*, such as damages or backpay calculations." *Fradella v. Petricca*, 183 F.3d 17, 19 (1st Cir. 1999) (emphasis added). Applying this standard, the *Fradella* court concluded that an arbitration award was final even though the award contained an error which the panel later corrected. *Id.* at 20 ("Thus, the contention that mere error—whether ministerial, procedural or substantive—renders an arbitral award non-'final' is fatally flawed."). This is exactly the situation at bar. The arbitrator explicitly noted, "the *only claim remaining* in this arbitration is possible AAA fee and cost shifting to the prevailing parties, here KCST and Axia." Arbitrator's Partial Final Award, AAA Case No. 01-17-00043049, Docket No. 220-2, at 30 (emphasis added). This issue is subsidiary and therefore does not render the arbitrator's award non-final. In addition, MTC has moved to correct computational errors and allocation of damages. Docket No. 222 at 2. Similarly, this contention of error does not preclude a finding of finality.

Alternatively, MTC argues that the Partial Final Award is not final because it has not been confirmed by this Court pursuant to 9 U.S.C. § 9. Section 9 of the FAA provides, in relevant part:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order [confirming the award] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9. Some courts have held that Section 9 is a mandatory one-year statute of limitations on confirmation suits. *See, e.g.*, *Photopaint Technologies, LLC v. Smartlens Corp.*, 335 F.3d 152,

7

156-58 (2d Cir. 2003). *But see Sverdrup Corp. v. WHC Constructors, Inc.*, 989 F.2d 148, 151-56 (4th Cir. 1993) (finding the one-year period permissive, not mandatory); *Val-U Const. Co. of S.D. v. Rosebud Siox Tribe*, 146 F.3d 573, 581 (8th Cir. 1998) (same).  While the First Circuit has not weighed in on this issue, it is possible that if Axia does not move to confirm within a year, it would be time-bared from doing so.

Moreover, if and when Axia moves to confirm, a reviewing court may confirm, vacate, modify, correct or remand the award for rehearing. *See* 9 U.S.C. §§ 9-11.  No reviewing court has yet had the opportunity to pass judgment on the Partial Final Award and confirm it. *See Bacardi Intern. Ltd. v. V. Suarez & Co., Inc.*, 719 F.3d 1, 13 (1st Cir. 2013) ("The confirmation of an arbitration award finalizes the award and makes the award a judgment of the court."); *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006) ("Because '[a]rbitration awards are not self-enforcing,' they must be given force and effect by being converted to judicial orders by courts; these orders can confirm and/or vacate the award, either in whole or in part.").

According to the language of the NOA that is incorporated in the Guarantee, however, Axia only has a duty to perform "while the dispute is being resolved."  The dispute here being the underlying dispute whether MTC had materially breached the NOA by failing to build sufficient CAIs.  The First Circuit noted that "once arbitration is completed, any possible need to compel performance pendente lite disappears." *Axia*, 889 F.3d at 8.  After issuing the "Partial Final Award", the arbitrator noted, "the only claim remaining in this arbitration is possible AAA fee and cost shifting to the prevailing parties, here KCST and Axia." Arbitrator's Partial Final Award, AAA Case No. 01-17-00043049, Docket No. 220-2, at 30.  In other words, the underlying dispute did not remain.  Indeed, the Arbitrator resolved the underlying dispute:

> Since MTC is found to have been in material breach of the NOA, MTC was not entitled to the benefits it secured pursuant to the Guarantee through the preliminary

>injunctive relief ordered, as KCST's balance sheet would have had millions of dollars of additional revenue that MTC, in effect, wrongfully appropriated as its own since mid-2014. Accordingly, since Asia complied with the preliminary injunction . . . , Axia is damages in the amounts identified above and is entitled to recoup those sums from MTC.

*Id.* at 29.

I find that the Partial Final Award represents a sufficient resolution of the underlying dispute to terminate Axia's duty of continued performance under the guarantee. This further represents a significant change in circumstances that renders continued enforcement of the injunction inequitable. Thus, I find that the injunction should be dissolved.

### 2. *Issuance of Bond*

According to Rule 65(c) a court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). "The purpose of such a bond is to ensure that the enjoined party may readily be compensated for the costs incurred as a result of the injunction should it later be determined that it was wrongfully enjoined." *Axia*, 889 F.3d, at 11.

"[A] party is wrongfully enjoined when it had a right all along to do what it was enjoined from doing." *Global Naps, Inc. v. Verizon New England, Inc.*, 489 F.3d 13, 22 (1st Cir. 2007). The Arbitrator found that "Axia performed its duties under the Guarantee and pursuant to the Preliminary Injunction, but should not have had to do so, but for MTC's wrongful behavior toward KCST and the diminution of KCST revenues such the Guarantee was tapped. As a result, Axia's duties under the Guaranty conferred a benefit upon MTC to which it was not entitled." Arbitrator's Partial Final Award, AAA Case No. 01-17-00043049, Docket No. 220-2, at 30. Axia contends

that this finding demonstrates that it was wrongfully enjoined and is consequently entitled to the bond.

Axia is not entitled to the Bond for two reasons. First, while the Arbitrator did find that Axia's performance under the Guaranty "conferred a benefit upon MTC to which it was not entitled," the Arbitrator did not find that MTC was wrongfully enjoined. *Id.* Rather, MTC's unjust enrichment was a result of its "wrongful behavior toward KCST" by violating the NOA. *Id.* In other words, MTC's conduct in the underlying dispute made it such that the Guaranty should have never been tapped but did not render the Guaranty void. In the Arbitrator's words:

> Since the underlying consideration for the Axia Guaranty was the NOA, and MTC materially breached it as noted above, Axia would have been excused *pro nunc tunc* from its performance obligations as of the date of breach—here determined to be July 15, 2014, <u>but for KCST's election to continue to perform, and to seek specific performance through renegotiated commercial terms per NOA sections 5.2.7 and 6.2</u>. Axia 'road the coat tails' of the KCST resolution of the failed underlying obligation. Certainly NOA section 11.2 also imposed a duty of continued performance on KCST while the dispute resolution played out. Thereafter, . . . KCST filed its bankruptcy petition . . . Following that filing—an Even of Default as defined in the Guarantee (section 3.2B), preliminary injunctive relief was secured by MTC against Axia compelling performance of the Guarantee. This resulted in Axia expending $3,865,334.81 to pay bills as of September 7, 2018; $862,042 for payments made through its subsidiaries under the Transactional Services Agreement (through the date claimed of June 30, 2018); and the incurring of $51,802 in costs in 2017 for services and time (R-198, table 1.3) in connection with information requests pursuant to the Preliminary Injunction Order. Since MTC is found to have been in material breach of the NOA, MTC was not entitled to the benefits it secured pursuant to the Guarantee through the preliminary injunctive relief ordered, as KCST's balance sheet would have had millions of dollars of additional revenue that MTC, in effect, wrongfully appropriated as its own since mid-2014. Accordingly, since Axia complied with the preliminary injunction . . . , Axia is damaged in the amounts identified above and is entitled to recoup those sums from MTC.

*Id.* at 28-29 (emphasis added). Thus, the Arbitrator never found that Axia was wrongfully enjoined. Rather, he concluded that Axia had an obligation to perform under the Guaranty given KCST's election to continue performance under the NOA. And while the Arbitrator did find Axia

is entitled to damages, his findings indicate that Axia is entitled to recovery as a result of MTC's wrongful conduct in the underlying dispute not because Axia was wrongfully enjoined in the continued performance dispute. *See Axia*, 889 F.3d at 6 ("MTC's success does not hinge on establishing that it will prevail in the underlying dispute. Rather, to succeed, it need prevail in establishing that Axia bound itself to perform pendente lite.").

Second, even if the Arbitrator found that Axia was wrongfully enjoined, it would not yet be entitled to the bond. In *Global NAPs*, the First Circuit found that

> The issue of whether Verizon was wrongfully enjoined was determined when we issued our opinion in [Global NAPs II] and rejected [Global NAPs'] arguments on the merits of its position. We then vacated the injunction because Verizon was entitled, and had been entitled all along, to cut off services to [Global NAPs].

323 F. Supp. 3d at 23. In *Momenta Pharm., Inc. v. Amphastar Pharm., Inc.*, the court interpreted *Global NAPs* as standing for the proposition that "the Court is required to defer consideration of the enforcement motion pending . . . appeal." 323 F. Supp. 3d 142, 147 (D. Mass. 2018).

Here, even if the Arbitrator found that Axia was wrongfully enjoined, that finding has not been confirmed by a court. *D.H. Blair*, 462 F.3d at 104 ("Because '[a]rbitration awards are not self-enforcing,' they must be given force and effect by being converted to judicial orders by courts; these orders can confirm and/or vacate the award, either in whole or in part."). Moreover, MTC has argued that the Arbitrator's findings should be vacated as he exceeded the scope of his authority in rewriting the underlying NOA agreement. *See* 9 U.S.C. §§ 9-11; *El Mundo Broadcasting Corp. v. USW*, 116 F.3d 7, 10 (1st Cir. 1997) (vacating an arbitration award when "the arbitrator enlarged the agreement and exceeded his authority under the CBA."). Axia rightfully notes that a court's review of an arbitration award is very limited. *See Farnsworth v. Towboat Nantucket Sound, Inc.*, 790 F.3d 90, 99 (1st Cir. 2015) ("Under the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances.'") (citation omitted). In

*Momenta*, however, the court noted that even though the standard of review on appeal would be more deferential than *de novo*, "the chance, *however remote*, that the Federal Circuit may decide the case differently makes enforcement of the bond premature." 232 F. Supp. 3d at 147 (emphasis added). Therefore, "even if this Court had jurisdiction over the bond motion at this time, it would defer consideration to the extent that it has the discretion to do so." *Id.* at 147; *see also Pabst Brewing Co. v. Corrao*, 999 F. Supp. 1242, 1243-44 (E.D. Wis. 1998) (declining to release surety bond as matter of discretion because final judgment in the case was pending appeal to the Seventh Circuit).

## Conclusion

For the reasons stated above, Axia's motion (Docket No. 220) is ***granted*** in part and ***denied*** in part. The preliminary injunction issued by this Court is dissolved but Axia is not entitled to execute on the bond.

**SO ORDERED.**

                                                                */s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**